# No. 26-1697

## IN THE UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

DELANEY BRYANT, BRIANNA LEMMON, AND VIOLET OSPINA,

*Plaintiffs-Appellants*,

v.

BUFFALO EXCHANGE, LTD.,

*Defendant-Appellee.*

On Appeal from the United States District Court for the Southern District of New York

## APPELLANTS' OPENING BRIEF

David J. Zimmer
ZIMMER, CITRON & CLARKE LLP
711 Atlantic Avenue, 6th Floor
Boston, MA 02111
(617) 676-9421

Julia A. Solomon-Strauss
ZIMMER, CITRON & CLARKE LLP
14 Ridge Square NW, Suite 328
Washington, DC 20016
(617) 676-9410

Molly Brooks
Justin M. Swartz
OUTTEN & GOLDEN LLP
685 Third Avenue, 25th Floor
New York, NY 10017
(212) 245-1000

*Counsel for Plaintiffs-Appellants*

October 6, 2026

# TABLE OF CONTENTS

INTRODUCTION ........................................................................ 1

JURISDICTIONAL STATEMENT ........................................................ 6

ISSUES PRESENTED .................................................................. 7

STATEMENT OF THE CASE ............................................................ 7

I. Legal Background ................................................................ 8

A. The Executive Budgeting Process in Article VII of the New York Constitution ................................................................ 8

B. New York Labor Law Sections 191 and 198 ...................... 13

II. Factual and Procedural Background ......................................... 18

SUMMARY OF ARGUMENT .......................................................... 20

STANDARD OF REVIEW ............................................................. 25

ARGUMENT ................................................................................ 25

I. The Amendment to Section 198 Is Invalid because It Exceeds the Limitations on Executive Budgeting in Article VII of the New York Constitution. ............................................................ 26

A. Legislation Enacted Pursuant to Article VII's Executive Budgeting Provisions Must Have Some Rational Relationship to the Budget. ............................................. 27

1. Sections 2 and 3 only authorize the Governor to introduce budget-related legislation. ........................ 28

a. The text and history of sections 2 and 3 limit the Governor's authority ................................ 28

b. The district court misread the phrase "may deem" and ignored the Court of Appeals' longstanding practice of reviewing budget-related separation-of-powers disputes. ........... 31

2. The anti-rider provision in section 6 independently requires that Article VII legislation be budget-related. .......... 36

3. The structure of Article VII bars non-budget-related legislation in Article VII bills. .......... 41

B. The Amendment Does Not Relate to the Budget. .......... 47

II. The Amendment Violates the Due Process Clause of the New York Constitution as Applied to Plaintiffs' Claims. .......... 53

A. Retroactive Application of the Amendment Violates Due Process. .......... 53

B. The District Court Erred in Concluding That the Amendment Was Not Impermissibly Retroactive. .......... 58

III. In the Alternative, This Court Should Certify the Questions in This Appeal to the New York Court of Appeals. .......... 62

CONCLUSION .......... 66

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

## TABLE OF AUTHORITIES

### Cases

*Alston v. Transportation Workers Union of Greater New York*,
225 A.D.2d 424 (N.Y. App. Div. 1st Dep't 1996) .......... 55

*Arias v. Gutman, Mintz, Baker & Sonnenfeldt LLP*,
875 F.3d 128 (2d Cir. 2017) .......... 25

*Arizona Sch. Bds. Ass'n Inc. v. State*,
501 P.3d 731 (Ariz. 2022) .......... 35

*Article 13 LLC v. Ponce De Leon Fed. Bank*,
45 N.Y.3d 441 (2025) .......... 24, 59, 60

*Asinga v. Gatorade Co.*,
182 F.4th 222 (2d Cir. 2026) .......... 63

*Associated Builders & Contractors v. Ventura*,
610 N.W.2d 293 (Minn. 2000) .......... 35

*Barlow v. Collins*,
397 U.S. 159 (1970) .......... 4, 21, 32

*Beardslee v. Inflection Energy, LLC*,
761 F.3d 221 (2d Cir. 2014) .......... 65

*Blair v. McDonagh*,
894 N.E.2d 377 (Ohio Ct. App. 2008) .......... 57

*Bloch v. Schwartz*,
266 A.D. 188 (N.Y. App. Div. 1st Dep't 1943) .......... 55

*Board of Trs. of N.D. Pub. Emps. Ret. Sys. v. North Dakota Legislative Assembly*,
996 N.W.2d 873 (N.D. 2023) .......... 35

*Bransten v. State*,
30 N.Y.3d 434 (2017) .......... 40

*Brothers v. Florence*,
95 N.Y.2d 290 (2000) .......... 60

*Delgado v. State*,
39 N.Y.3d 242 (2022) .......... 37, 40

*Douglas v. Cox Ret. Props., Inc.*,
302 P.3d 789 (Okla. 2013) .......... 35

*Estate of Bell v. Shelby County Health Care Corp.*,
318 S.W.3d 823 (Tenn. 2010) .......... 57, 61

*Flanders v. Morris*,
558 P.2d 769 (Wash. 1977) .......... 44

*Freeland v. Findlay's Tall Timbers Distrib. Ctr., LLC*,
No. 22-CV-6415, 2024 WL 4652251 (W.D.N.Y. Nov. 1, 2024) .......... 15

*Gilbert v. Ackerman*,
159 N.Y. 118 (1899) .......... 5, 24, 54, 58

*Grant v. Global Aircraft Dispatch*,
223 A.D.3d 712 (N.Y. App. Div. 2d Dep't 2024) .......... 14, 15

*HSBC Bank USA, N.A. v. Besharat*,
80 Misc. 3d 269 (N.Y. Sup. Ct. 2023) .......... 55

*Janus v. American Fed'n of State, County, & Mun. Emps., Council 31*,
585 U.S. 878 (2018) .......... 38

*Klotz v. St. Anthony's Med. Ctr.*,
311 S.W.3d 752 (Mo. 2010) .......... 57, 61

*Marshall County Health Care Auth. v. Shalala*,
988 F.2d 1221 (D.C. Cir. 1993) .......... 32

*Martin by Scoptur v. Richards*,
531 N.W.2d 70 (Wis. 1995) .......... 57

*Merz v. Seaman*,
265 A.D.2d 385 (N.Y. App. Div. 2d Dep't 1999) .......... 55

*Miles v. Weingrad*,
164 So. 3d 1208 (Fla. 2015) .......... 57

*New York Bankers Ass'n v. Wetzler*,
81 N.Y.2d 98 (1993) .......... 34

*Parker v. Alexander*,
171 F.4th 146 (2d Cir. 2026) .......... 64

*Pataki v. New York State Assembly*,
4 N.Y.3d 75 (2004) .......... 9, 11, 21, 22, 29, 33, 34, 37, 41, 42, 43, 46, 47, 64

*People v. Tremaine*,
252 N.Y. 27 (1929) .......................................................... 37

*Planned Parenthood of St. Louis Region v. Department of Soc. Servs.*,
602 S.W.3d 201 (Mo. 2020) .......................................................... 35

*Prince George's County v. Longtin*,
19 A.3d 859 (Md. 2011) .......................................................... 56, 61

*Progressive Credit Union v. City of New York*,
889 F.3d 40 (2d Cir. 2018) .......................................................... 52

*Regina Metro. Co., LLC v. New York State Div. of Hous. & Cmty. Renewal*,
35 N.Y.3d 332 (2020) .......................................... 24, 53, 57, 58, 60, 61

*Rudder v. Pataki*,
93 N.Y.2d 273 (1999) .......................................................... 5, 50

*Ruffolo v. Garbarini & Scher, P.C.*,
239 A.D.2d 8 (N.Y. App. Div. 1st Dep't 1998) .......... 6, 24, 54, 55, 58

*Saratoga County Chamber of Commerce, Inc. v. Pataki*,
100 N.Y.2d 801 (2003) .......................................... 4, 21, 26, 33, 34, 43

*Schoenefeld v. New York*,
748 F.3d 464 (2d Cir. 2014) .......................................................... 64

*Schuyler v. South Mall Constructors*,
32 A.D.2d 454 (N.Y. App. Div. 3d Dep't 1969) (per curiam) .......... 48

*Securities & Exch. Comm'n v. Chenery Corp.*,
318 U.S. 80 (1943) .......................................................... 52

*Center for Jud. Accountability, Inc. v. Cuomo*,
167 A.D.3d 1406 (N.Y. App. Div. 3d Dep't 2018) .......................... 48

*Seidemann v. Professional Staff Cong. Loc. 2334*,
432 F. Supp. 3d 367 (S.D.N.Y. 2020), *aff'd*, 842 F. App'x 655 (2d Cir. 2021) .......................................................... 23, 39, 47, 48

*Seidemann v. Professional Staff Cong. Loc. 2334, Am. Fed'n of Teachers AFL-CIO*,
842 F. App'x 655 (2d Cir. 2021) .................. 21, 27, 38, 39, 40, 47, 48

*Silver v. Pataki*,
96 N.Y.2d 532 (2001) .......................................................... 29

*South Dakota Educ. Ass'n/NEA By & Through Roberts v. Barnett*, 582 N.W.2d 386 (S.D. 1998). .......... 35

*Tantaros v. Fox News Network, LLC*, 12 F.4th 135 (2d Cir. 2021) .......... 25

*Vega v. CM & Assoc. Constr. Mgmt., LLC*, 175 A.D.3d 1144 (N.Y. App. Div. 1st Dep't 2019) .......... 1, 2, 13, 14

**New York Statutes**

2019 N.Y. Laws ch. 56, pt. DD, § 1 .......... 38

2025 N.Y. Laws ch. 56, pt. U .......... 18

22 N.Y.C.R.R. § 500.27(a) .......... 62

N.Y. Const. art VII, § 4 .......... 12

N.Y. Const. art. III, § 1 .......... 8

N.Y. Const. art. III, § 12 .......... 8

N.Y. Const. art. III, § 13 .......... 8

N.Y. Const. art. III, § 14 .......... 8

N.Y. Const. art. IV, § 3 .......... 13, 44

N.Y. Const. art. IV, § 7 .......... 9

N.Y. Const. art. VII .......... 11

N.Y. Const. art. VII, § 2 .......... 2, 4, 11, 12, 20, 28, 29, 37, 49, 51

N.Y. Const. art. VII, § 3 .......... 4, 11, 12, 20, 29

N.Y. Const. art. VII, § 5 .......... 12, 44

N.Y. Const. art. VII, § 6 .......... 12, 37

N.Y. Const. art. VII, § 7 .......... 12

N.Y. Lab. Law § 190 .......... 13, 14, 47

N.Y. Lab. Law § 191 .......... 1, 13

N.Y. Lab. Law § 198 .......... 2, 14

N.Y. Legis. Law § 5(1) .......... 13, 18, 44

N.Y. State Fin. Law § 40 .......... 12

**New York Legislative Rules**

N.Y. Assemb. R. III, § 2(a) .......... 16

N.Y. Sen. R. VI, § 1 .......... 16

**Federal Statutes and Rules**

28 U.S.C. § 1291 .......... 7

28 U.S.C. § 1332 .......... 6

2d Cir. R. 27.2(a) .......... 62

Fed. R. App. P. 4(a)(1)(A) .......... 7

**Other Authorities**

E.J. McMahon, *New York's "budget" is more overstuffed than ever (and not just with dollars)*, Ever Upward (Mar. 24, 2025), https://ejmcmahon.substack.com/p/new-yorks-budget-is-more-overstuffed .......... 3

Henry L. Stimson, Report of the Committee on State Finances, Revenues and Expenditures, Relative to a Budget System for the State, *in* DOCUMENTS OF THE CONSTITUTIONAL CONVENTION OF THE STATE OF NEW YORK 1915, Doc. 32 .......... 9, 10

N.Y. Dep't of Labor Opinion Letter, No. RO-09-0066 (May 21, 2009) ... 14

Sam Mellins et al., *Critics Say Messy Budget 'Deal' Highlights Bigger Woes*, N.Y. Focus (May 7, 2026), https://nysfocus.com/2026/05/07/albany-budget-deal-hochul-heastie .......... 3

## INTRODUCTION

This appeal presents two novel and important questions of New York constitutional law: (1) whether the Governor can use the Executive budgeting process in Article VII of the New York Constitution to introduce legislation that has nothing to do with the budget; and (2) whether the Due Process Clause of the New York Constitution permits legislation that strips plaintiffs in pending litigation of any meaningful remedy for a past harm. The district court incorrectly answered "yes" to both questions, raising profound separation-of-powers concerns on questions of vital importance to governance in New York. This Court should either reverse the district court's decision or certify these questions to the Court of Appeals.

For many years, New York Labor Law section 191 has required that employers pay "manual workers" weekly. N.Y. Lab. Law (NYLL) § 191. This is a critical protection for a class of generally lower-income employees who are most "dependent upon their wages for sustenance." *Vega v. CM & Assoc. Constr. Mgmt., LLC*, 175 A.D.3d 1144, 1146 (N.Y. App. Div. 1st Dep't 2019). Until recently, New York Labor Law required that an employer who failed to provide the weekly

compensation the statute requires pay liquidated damages equal to the wages that the employer did not timely pay. *See id.*; NYLL § 198.

The Legislature repeatedly rebuffed employers' efforts to limit that remedy. Year after year, a handful of legislators introduced bills to amend the statute by removing the liquidated-damages remedy. Year after year, the bills failed to make it out of committee.

In 2025, however, the Governor sought to use the budget process to override the Legislature's refusal to advance or pass legislation repealing the liquidated-damages remedy. The New York Constitution, like the federal Constitution, generally vests the power to introduce legislation with the Legislature, not the Executive. But Article VII of the New York Constitution creates a narrow exception during the budget process, authorizing the Governor to introduce appropriation bills and related legislation that "the governor may deem necessary to provide moneys and revenues sufficient to meet such proposed expenditures." N.Y. Const. art. VII, § 2. In recent years, the Governor has increasingly used the Article VII budget process to force through policy proposals that have nothing to do with the budget and that the

Legislature refuses to pass on its own—a trend that has been criticized by good-governance advocates across the political spectrum.[1]

That is what happened here: Even though the Legislature had consistently rejected efforts to repeal the liquidated-damages provision, the Governor's immense power over the budget process ultimately allowed her to force through legislation that amended section 198 to replace the liquidated-damages provision with a largely meaningless interest-only remedy and applied that amendment retroactively to pending litigation. The district court in this case applied that legislation to grant judgment to defendant Buffalo Exchange, rejecting plaintiffs' arguments that the amendment violates Article VII and, to the extent it applies retroactively to plaintiffs' pending claims, the Due Process Clause of the New York Constitution.

This Court should either reverse or certify these questions of New York constitutional law to the New York Court of Appeals. Article VII

---

[1] *E.g.*, Sam Mellins et al., *Critics Say Messy Budget 'Deal' Highlights Bigger Woes*, N.Y. Focus (May 7, 2026), https://nysfocus.com/2026/05/07/albany-budget-deal-hochul-heastie; E.J. McMahon, *New York's "budget" is more overstuffed than ever (and not just with dollars)*, Ever Upward (Mar. 24, 2025), https://ejmcmahon.substack.com/p/new-yorks-budget-is-more-overstuffed.

only allows the Governor to introduce two types of bills as part of the budget process—(1) appropriation bills and (2) bills "the governor may deem necessary to provide moneys and revenues sufficient to meet" those appropriations. N.Y. Const. art. VII, §§ 2, 3. Article VII does not turn the Governor into a general-purpose legislator during the budget process. Though the district court did not dispute this, it read the phrase "may deem" to give the Governor sole, unreviewable authority to introduce any type of legislation as part of the budget process. But other courts, including the U.S. Supreme Court, have rejected the argument that similar uses of the phrase "may deem" confer unreviewable discretion. *E.g.*, *Barlow v. Collins*, 397 U.S. 159, 165–66 (1970). And the Court of Appeals has repeatedly recognized that it "falls to the courts, and ultimately to this Court," to ensure that the Executive does not exceed its "given sphere of authority." *Saratoga County Chamber of Commerce, Inc. v. Pataki*, 100 N.Y.2d 801, 821–22 (2003). The district court identified no reason to think the Court of Appeals would give free rein to the Executive here.

Amending the New York Labor Law's liquidated-damages provision has nothing to do with the budget. Memoranda accompanying

every piece of legislation that proposed repealing section 198's liquidated-damages remedy bluntly characterized the fiscal impact of the legislation as: "None." The district court reached the contrary conclusion only by speculating that repealing the liquidated-damages remedy might impact tax revenues—a theory the Governor never advanced. The Court of Appeals has cautioned against reading expenditure-related provisions in a way that would sweep in "virtually all governmental acts," and there is no reason to think it would not reach the same conclusion here. *Rudder v. Pataki*, 93 N.Y.2d 273, 281 (1999). Every government policy could be theoretically tied to tax revenues, so allowing such an attenuated link to the budget would be equivalent to giving the Governor unreviewable discretion.

The New York Constitution's Due Process Clause provides an independent basis for invalidating the amendment, at least to the extent the amendment applies retroactively to claims that were pending before the amendment took effect. For more than a century, the Court of Appeals has held that "[t]he right possessed by a person of enforcing his claim against another is property," *Gilbert v. Ackerman*, 159 N.Y. 118, 124 (1899), and thus that retroactive legislation cannot vitiate a

claim that was "viable at the time it was filed," *Ruffolo v. Garbarini & Scher, P.C.*, 239 A.D.2d 8, 12 (N.Y. App. Div. 1st Dep't 1998). The district court held that these cases only apply to the repeal of a cause of action, not a change to the remedy. But if the repeal of a cause of action would violate due process, there is no reason that the repeal of any meaningful remedy—say, limiting the remedy to a penny—should avoid any scrutiny whatsoever.

The district court thus erred in upholding the amendment at issue. At the very least, however, these novel questions of New York constitutional law—which cut to the heart of the structure of the New York government—should be answered by the Court of Appeals.

## JURISDICTIONAL STATEMENT

The district court had jurisdiction under 28 U.S.C. § 1332(a) and (d). The district court granted the defendant partial judgment on the pleadings under Federal Rule of Civil Procedure 12(c) on May 6, 2026. JA249. After plaintiffs dismissed with prejudice any claim for a remedy other than liquidated damages, the district court entered judgment for the defendant on May 29, 2026. JA252. On June 23, 2026, plaintiffs

timely noticed this appeal. JA263–64; *see* Fed. R. App. P. 4(a)(1)(A). This Court has jurisdiction under 28 U.S.C. § 1291.

## ISSUES PRESENTED

1. Whether the amendment to section 198 of New York Labor Law enacted as part of the Governor's budget for fiscal year 2026 is unconstitutional because it violates the restrictions on the Governor's power to introduce legislation in Article VII of the New York Constitution.

2. Whether the amendment to section 198 of New York Labor Law enacted as part of the Governor's budget for fiscal year 2026 violates the Due Process Clause of the New York Constitution to the extent it applies retroactively to reach plaintiffs' pending claims.

3. Whether this Court should certify these questions to the New York Court of Appeals.

## STATEMENT OF THE CASE

Plaintiffs, hourly-paid retail workers and employees of defendant Buffalo Exchange, allege that Buffalo Exchange violated section 191 of New York Labor Law by depriving them of the weekly pay to which they were entitled. The district court (Subramanian, J.) dismissed their

claim for liquidated damages based on a recent amendment to New York Labor Law that the Governor introduced as part of her fiscal year 2026 budget. *See Bryant v. Buffalo Exch., Ltd.*, No. 23-CV-8286, 2026 WL 1240054 (S.D.N.Y. May 6, 2026). Because plaintiffs dismissed with prejudice their claims for any remedy other than liquidated damages, the court entered judgment for Buffalo Exchange. This appeal concerns whether the 2025 amendment to New York Labor Law section 198 (the Amendment) violates the New York Constitution.

## I. Legal Background

This case implicates both New York's Executive budgeting process and New York Labor Law.

### A. The Executive Budgeting Process in Article VII of the New York Constitution

New York's standard process for enacting legislation, set forth in Articles III and IV of the New York Constitution, largely mirrors the U.S. Constitution. Under Article III, section 1, "[t]he legislative power of this state shall be vested in the senate and assembly." N.Y. Const. art. III, § 1. A bill must be introduced by a legislator and passed by a majority vote in the Senate and Assembly. *Id.* §§ 12–14. The bill must then be signed by the Governor or approved by two-thirds of the

members of the Senate and the Assembly. N.Y. Const. art. IV, § 7. The Legislature is thus the "constructor" of legislation, and the Governor the "critic." *See Pataki v. New York State Assembly*, 4 N.Y.3d 75, 82–83 (2004).

Before 1927, "all budget legislation, like other legislation, originated with the Legislature." *Id.* at 81. In the early 20th century, however, following increasing concern about inefficiencies in the Legislature's budgeting process, a reform movement advocated fundamental changes to that process. *See id.* at 81–82. The committee tasked with considering these reforms concluded that "the Legislature is not the proper branch of the government to initiate . . . a program of annual expenditures." Henry L. Stimson, Report of the Committee on State Finances, Revenues and Expenditures, Relative to a Budget System for the State, *in* DOCUMENTS OF THE CONSTITUTIONAL CONVENTION OF THE STATE OF NEW YORK 1915, Doc. 32 at 8.[2] The committee criticized the Legislature for stuffing its appropriation bills with local concessions and for "tend[ing] to destroy publicity and opportunity for debate." *Id.* at 8–9. As the committee observed: "[I]t is

[2] Available at https://bit.ly/3VSSbBM.

safe to say that under ordinary conditions not only is the public ignorant of the items of appropriation bills until they are enacted into Law, but the same ignorance applies to the members of the Legislature outside the one or two men who control the conduct of the bill." *Id.* at 9–10.

Because the Legislature's process was inefficient, disorganized, and anti-democratic, the report recommended, among other reforms, that the Governor propose state appropriations in the first instance. *See id.* at 14–17. The report stressed, however, that the proposal "would add not one iota to the power that [the Governor] now possesses" to veto proposed appropriations. *Id.* at 21. On the contrary, the report explained that an Executive budgeting process would "compel [the Governor] to use his influence in advance, in the open, under the fire of legislative discussion and the scrutiny of the entire State." *Id.*

In 1927, voters approved Article IV-A of the Constitution, which created the first version of the Executive budgeting process. *See* JA156–60. Article IV-A only authorized the Governor to introduce appropriation bills, not legislation addressing revenues or other budget-related policies. JA158. In 1938, the Constitution was amended again,

and Article IV-A became the current Article VII of the New York Constitution. *See* N.Y. Const. art. VII; *Pataki*, 4 N.Y.3d at 83; *id.* at 117–18 (Kaye, C.J., dissenting).

Article VII sets forth the process for Executive budgeting. Section 2 requires that the Governor "submit to the legislature a budget containing a complete plan of expenditures proposed to be made" and "revenues estimated to be available therefor," as well as "recommendations as to proposed legislation, if any, which the governor may deem necessary to provide moneys and revenues sufficient to meet such proposed expenditures." N.Y. Const. art. VII, § 2.

Section 3 of Article VII requires that, "[a]t the time of submitting the budget to the legislature," the Governor "submit a bill or bills containing all the proposed appropriations . . . included in the budget and the proposed legislation, if any, recommended therein." *Id.* § 3. Section 3 thus authorizes the Governor to submit two types of bills. The first type, "bills containing all the proposed appropriations," are generally known as appropriation bills. *Id.* The second type of bill is "the proposed legislation . . . recommended" in "the budget." *Id.* Per section 2, these bills are the "proposed legislation, if any, which the

governor may deem necessary to provide moneys and revenues sufficient to meet such proposed expenditures." *Id.* §§ 2, 3. These are generally known as Article VII bills.

Several other provisions in Article VII also restrict the Executive budgeting process. As relevant here, section 6 of Article VII bars any provision in an appropriation bill that does not "relate[] specifically to some particular appropriation in the bill." *Id.* § 6. And section 4 imposes certain restrictions on the Legislature's authority to amend appropriation bills, which generally do not apply to Article VII bills. *Id.* § 4.

The Constitution imposes significant restraints on the timing of the budget's introduction and enactment. The Governor must submit the budget to the Legislature by a specific date in January or February, and the budget must be passed by the end of the fiscal year, March 31 (or as close to that date as possible). *See id.* §§ 2, 7; N.Y. State Fin. Law § 40. While the budget is pending, the Legislature cannot introduce or consider any other legislation that includes an appropriation, unless the Governor certifies that there are exigent circumstances. N.Y. Const. art. VII, § 5. When the Legislature fails to timely enact the budget,

legislators stop getting paid—though the Governor continues to collect her salary without interruption. *Compare* N.Y. Legis. Law § 5(1) *with* N.Y. Const. art. IV, § 3.

### B. New York Labor Law Sections 191 and 198

Section 191 of New York Labor Law protects low-wage, manual workers who are "dependent upon their wages for sustenance" and need to get paid every week to support themselves and their families. *Vega v. CM & Assoc. Constr. Mgmt., LLC*, 175 A.D.3d 1144, 1146 (N.Y. App. Div. 1st Dep't 2019). It provides that "[a] manual worker shall be paid weekly and not later than seven calendar days after the end of the week in which the wages are earned." NYLL § 191(1)(a)(i). Though the statute defines "manual worker" as a "mechanic, workingman or laborer," *id.* § 190(4), the New York Department of Labor has interpreted the term to encompass all "employees who spend more than 25 percent of their working time performing physical labor," N.Y. Dep't of Labor Opinion Letter, No. RO-09-0066 (May 21, 2009). Section 191

only applies to certain private employers, not the government. NYLL § 190(3).

Section 198 identifies the remedies for violations of New York Labor Law Article 6, which includes section 191. It generally provides that, for any "wage claim . . . in which the employee prevails," the employee is entitled to liquidated damages equal to "the full amount of any underpayment." *Id.* § 198(1-a). In 2019, the Appellate Division, First Department, held in *Vega* that "the term underpayment" in section 198 includes cases "where an employer violates the frequency requirements of section 191(1)(a) but pays all wages due before the commencement of an action." 175 A.D.3d at 1145. Thus, under *Vega*, when an employer does not pay its manual workers weekly, those employees are entitled to recover, as liquidated damages, the full amount of the wages that were not paid as required by law.

In 2024—after the complaint in this case was filed—the Second Department decided *Grant v. Global Aircraft Dispatch*, which disagreed with *Vega* and held that section 198 did not provide a cause of action for section 191 violations. *See* 223 A.D.3d 712, 719 (N.Y. App. Div. 2d Dep't 2024). *Grant* reasoned that, at least when an employer pays manual

workers biweekly, that late payment does not constitute "underpayment" under section 198(1-a), so section 198 does not provide a remedy for those claims. *Id.* at 715.

More than a dozen district courts in this Circuit have been called upon to decide whether *Vega* or *Grant* is correct, and "almost all . . . have predicted that the Court of Appeals would side with *Vega* and hold that there is either an express or implied private right of action for late payment of wages." JA39 (collecting cases).[3] The district court in this case likewise "agree[d] that there is an express private right of action" in section 198 for section 191 violations. JA39.

Following *Vega*, certain legislators introduced bills that would have eliminated or severely curtailed the liquidated-damages remedy for section 191 violations. *See* JA183–229. Some bills—introduced in each of the 2021-2022, 2023-2024, and 2025-2026 legislative sessions—would have limited employees to a flat-fee recovery of $1,000, $2,000, or $3,000, depending on how many times the employer had violated the statute. *See* S. 9511, 2021-2022 Leg., Reg. Sess. (N.Y. 2022); S. 361,

[3] Only one district court has sided with *Grant*. *See Freeland v. Findlay's Tall Timbers Distrib. Ctr., LLC*, No. 22-CV-6415, 2024 WL 4652251 (W.D.N.Y. Nov. 1, 2024).

2023-2024 Leg., Reg. Sess. (N.Y. 2023); A. 6877, 2023-2024 Leg., Reg. Sess. (N.Y. 2023); S. 5463, 2025-2026 Leg., Reg. Sess. (N.Y. 2025); *see also* JA183–96, JA204–08, JA223–29. Another bill, proposed in the 2023-2024 legislative session by Senator Jeremy Cooney, would have stricken manual workers' opportunity to recover liquidated damages and allowed only recovery of interest on late payments. *See* S. 9811, 2023-2024 Leg., Reg. Sess. (N.Y. 2024); JA197–203. Each of these bills was referred to committee, the first stop for a bill after it is introduced. *See* N.Y. Assemb. R. III, § 2(a); N.Y. Sen. R. VI, § 1. None of the bills advanced beyond that point. *See* JA183–229.

The Legislature recognized that these changes to the Labor Law's liquidated-damages provision for section 191 violations would have no budgetary impact. Each of the seven bills states, as part of its sponsor memorandum, that its fiscal impact on state and local governments would be: "None." JA187, JA194, JA201, JA208, JA213, JA220, JA227.

After the Legislature refused to advance these proposed amendments to section 198, repeal efforts moved to the Executive budgeting process. On January 21, 2025, the Governor unveiled her Executive budget for fiscal year 2026. One of her Article VII bills

included a provision to amend section 198(1-a) to remove the liquidated-damages remedy for an employer's initial section 191 violation if the employer paid the employees regularly and at least semi-monthly. *See* FY 2026 New York State Executive Budget: Education, Labor and Family Assistance Article VII Legislation at 102, Part U, § 1.[4] Those manual workers would only be entitled to interest on their late paychecks. *See id.* The provision would "take effect immediately" and "apply to causes of action pending or commenced on or after" enactment. *Id.* § 2. The proposed amendment—which was nearly identical to Senator Cooney's proposed bill in the 2023-2024 legislative session—occupied 2.5 pages of the 121-page Article VII bill devoted to education, labor, and family assistance law, which was itself a small part of approximately 4,000 pages of appropriations and Article VII legislation the Governor introduced that year.

Consistent with the Legislature's refusal to enact any of the seven prior proposals to amend section 198, including one that was pending when the Governor introduced her budget, both the Senate and

[4] Available at https://www.budget.ny.gov/pubs/archive/fy26/ex/ artvii/ elfa-bill.pdf.

Assembly cut the Governor's proposed amendment from their versions of the budget. JA234, JA242. The amendment then reappeared (in slightly modified form) in the Governor's May version of the budget and was enacted as part of an Article VII bill. *See* 2025 N.Y. Laws ch. 56, pt. U..

When the Legislature agreed to the Governor's May version of the budget that included the repeal of the liquidated-damages provision, legislators had not been paid for more than a month. *See* N.Y. Legis. Law § 5(1).

## II. Factual and Procedural Background

Plaintiffs Delaney Bryant, Brianna Lemmon, and Violet Ospina worked at Buffalo Exchange as retail employees in New York. JA28, JA33. They each allege that, while they worked for Buffalo Exchange, more than a quarter of their job duties involved physical tasks, including standing at all times and moving inventory, displays, boxes, and goods around the store. JA33. Because these job duties would qualify them as manual workers under New York Labor Law, section 191 requires that they be paid weekly. But Buffalo Exchange paid them every two weeks, violating section 191 and depriving plaintiffs of the

regular access to their wages to which they are entitled. JA34. Consistent with the law in place both at the time Buffalo Exchange violated the statute and at the time plaintiffs filed their complaint, plaintiffs sought liquidated damages equal to the amount of wages that were not timely paid. JA35–36.

On August 6, 2024, the district court denied Buffalo Exchange's motion to dismiss plaintiffs' first amended complaint. The court followed *Vega* and the weight of authority in this Circuit to hold that section 198 provides a cause of action when an employer violates section 191. JA39.

On May 9, 2025, the amendment to section 198 became law. On May 6, 2026, the district court granted Buffalo Exchange's motion for partial judgment on the pleadings, dismissing plaintiffs' claim for liquidated damages. JA249. The district court held that the Amendment did not violate Article VII, because sections 2 and 3 "do not create substantive limits on Article VII bills" and because section 6 "does not apply to the amendment." JA244–45. The district court also reasoned that the Amendment could be related to the budget because it might indirectly impact tax revenues. JA247. Finally, the district court

held that the Amendment did not violate due process because plaintiffs had no vested rights and because any disruption to their settled expectations was minimal. JA247–48.

On May 29, 2026, the district court entered judgment in favor of Buffalo Exchange after plaintiffs dismissed with prejudice their claims for any remedy other than liquidated damages. *See* JA251–52.

## SUMMARY OF ARGUMENT

I. The Amendment to section 198 is invalid because it exceeds the New York Constitution's limits on Executive budgeting. Although the Governor introduced the Amendment in her budget package, it does not relate, in any way, to the budget. It is therefore unconstitutional.

A. The Governor can only use Article VII to introduce legislation that has some rational relationship to an appropriation in the budget. This limitation comes from three aspects of Article VII.

First, and most importantly, sections 2 and 3 of Article VII establish that the Governor may only introduce nonappropriation, Article VII bills that "the governor may deem necessary to provide moneys and revenues sufficient to meet [the budget's] proposed expenditures." N.Y. Const. art. VII, §§ 2, 3. The district court did not

dispute that sections 2 and 3 require that Article VII legislation relate to the budget. But it erroneously read the phrase "may deem" to confer unreviewable authority on the Governor to classify any legislation she chooses as budget-related, even if it has nothing to do with the budget. That interpretation conflicts with other courts' reading of identical "may deem" language and New York courts' repeated enforcement of constitutional provisions dividing power between the Executive and the Legislature. *See, e.g.*, *Barlow v. Collins*, 397 U.S. 159, 165–66 (1970); *Saratoga County Chamber of Commerce, Inc. v. Pataki*, 100 N.Y.2d 801, 821–22 (2003).

Second, section 6 of Article VII imposes a "judicially enforceable limit[]" on the scope of Article VII legislation. *Pataki v. New York State Assembly*, 4 N.Y.3d 75, 99 (2004) (plurality op.). Though, on its face, section 6 only applies to appropriation bills, its history demonstrates that it was intended to encompass all Executive budgeting legislation, including Article VII bills. Accordingly, this Court has applied section 6 to Article VII bills. *Seidemann v. Professional Staff Cong. Loc. 2334, Am. Fed'n of Teachers AFL-CIO*, 842 F. App'x 655, 659 (2d Cir. 2021).

Third, the New York Court of Appeals recognized in *Pataki* that the Constitution imposes implicit, structural limits on the Governor's ability to use her Article VII powers to introduce nonbudgetary legislation. 4 N.Y.3d at 93–94. By design, the Article VII process gives the Governor power to push through appropriation legislation that the Legislature would not otherwise enact. But because of that, the Court of Appeals explained that the Governor cannot use Article VII to push through "legislation whose primary purpose and effect is not really budgetary." *Id.* at 93. The Governor's use of the budget process to force through the Amendment—which the Legislature had consistently refused to enact on its own—vindicates the Court of Appeals' concerns.

The district court read *Pataki* narrowly to apply only to appropriation bills because of section 4's limitation on the Legislature's authority to amend such bills. That misreads the decision. While the plurality briefly discussed section 4, most of its analysis did not focus on section 4. And the concurrence did not discuss section 4 at all.

B. The Amendment is unconstitutional because it does not relate, in any way, to the budget. Article VII legislation is only valid where there is "a rational relationship between the challenged provision and a

general item of appropriation in the budget." *Seidemann v. Professional Staff Cong. Loc. 2334*, 432 F. Supp. 3d 367, 390 (S.D.N.Y. 2020), *aff'd*, 842 F. App'x 655 (2d Cir. 2021). But the Amendment has no such relationship whatsoever. It is a purely nonbudgetary policy matter with no connection to any item of appropriation.

The district court wrongly held that because the Amendment might affect the state budget in the most attenuated ways, it survived this test. But the district court's own speculative reasons for how the Amendment could affect the budget do not render it constitutional. The holding below is irreconcilable with the Legislature's own fiscal impact memoranda. Embracing the district court's holding would effectively make the Governor's legislative authority unreviewable, because any policy legislation could qualify as budget-related if it is possible to conceive of a chain of events that could have any effect on state revenues. The New York Constitution does not tolerate that approach. And the district court's post-hoc justification cannot fix the Governor's failure to fulfill her own constitutional obligations under Article VII.

II. The Amendment is unconstitutional for the second, independent reason that it violates the Due Process Clause of the New

York Constitution as applied to plaintiffs' claims, which were already pending when the Amendment took effect. Under *Gilbert v. Ackerman*, 159 N.Y. 118 (1899), and cases applying *Gilbert*, the Amendment deprives plaintiffs of due process because it "require[s] dismissal of an action that was viable at the time it was filed." *Ruffolo v. Garbarini & Scher, P.C.*, 239 A.D.2d 8, 12 (N.Y. App. Div. 1st Dep't 1998). And there is no "rational basis commensurate with the degree of retroactive effect" on plaintiffs' claims to satisfy the New York Court of Appeals' due process standard. *Regina Metro. Co., LLC v. New York State Div. of Hous. & Cmty. Renewal*, 35 N.Y.3d 332, 375 (2020). The district court erred in holding that the Amendment is not impermissibly retroactive. Neither the standard nor the reasoning of *Article 13 LLC v. Ponce De Leon Federal Bank*, 45 N.Y.3d 441 (2025), on which the district court relied, undermines plaintiffs' claims. The district court also imposed a categorical distinction between rights and remedies that does not exist under New York law and incorrectly determined that the Amendment did not disrupt plaintiffs' settled rights.

III. In the alternative, the Court should certify to the New York Court of Appeals the novel and important questions of New York constitutional law raised by this case.

## STANDARD OF REVIEW

The Court "review[s] the grant of a motion for judgment on the pleadings *de novo*, accepting the factual allegations in the complaint as true and drawing all reasonable inferences in favor of" the plaintiffs. *Arias v. Gutman, Mintz, Baker & Sonnenfeldt LLP*, 875 F.3d 128, 134 (2d Cir. 2017).

Because the appeal raises questions of New York law that have not been definitively addressed by the New York Court of Appeals, the Court must evaluate how the Court of Appeals would likely resolve these questions. *See Tantaros v. Fox News Network, LLC*, 12 F.4th 135, 142 (2d Cir. 2021).

## ARGUMENT

The district court's decision to dismiss plaintiffs' claim for liquidated damages depends entirely on the amendment to section 198 that retroactively strips manual workers in New York of their longstanding liquidated-damages remedy for section 191 violations.

The Amendment is unconstitutional for two independent reasons. First, the Amendment was impermissibly enacted through the Executive budgeting process. Second, to the extent the Amendment applies retroactively, it violates the Due Process Clause of the New York Constitution. This Court should either reverse the district court or certify these questions to the Court of Appeals.

## I. The Amendment to Section 198 Is Invalid because It Exceeds the Limitations on Executive Budgeting in Article VII of the New York Constitution.

Article VII of the New York Constitution creates a narrow exception to the normal legislative process by authorizing the Governor to introduce budget-related legislation. Though statutes properly enacted by the Legislature are entitled to a presumption of constitutionality, it "falls to the courts" to decide whether the Governor has exceeded her constitutional powers. *Saratoga County Chamber of Commerce, Inc. v. Pataki*, 100 N.Y.2d 801, 822 (2003). In this case, she did. The Constitution does not, in any sense, transform the Governor into a general-purpose legislator for ten weeks a year. The text, structure, and history of Article VII specifically, and the New York Constitution generally, make clear that legislation introduced by the

Governor must have *something* to do with the budget. As this Court previously recognized in addressing a similar challenge to an Article VII bill, provisions in Article VII legislation must have some rational relationship to the budget. *See Seidemann v. Professional Staff Cong. Loc. 2334, Am. Fed'n of Teachers AFL-CIO*, 842 F. App'x 655, 659 (2d Cir. 2021). No such relationship exists between the Amendment and the appropriations in the Governor's budget. The Amendment is therefore invalid.

### A. Legislation Enacted Pursuant to Article VII's Executive Budgeting Provisions Must Have Some Rational Relationship to the Budget.

The New York Constitution makes clear that Executive budgeting under Article VII is a narrow exception to the standard legislative process. It does not transform the Governor into a general-purpose member of the Legislature during budget season. Instead, the Governor may only introduce nonappropriation legislation with some rational relationship to the budget. The district court erred in concluding otherwise.

### 1. Sections 2 and 3 only authorize the Governor to introduce budget-related legislation.

The clearest limitation on the Governor's Article VII authority is in sections 2 and 3 of Article VII, which require that the nonappropriation legislation the Governor introduces through Executive budgeting bear *some* relationship to the budget. The district court did not disagree, but held that the phrase "may deem" in section 2 gives the Governor unreviewable discretion to classify anything she chooses as budget-related, even if it has nothing to do with the budget. That misreads the text and conflicts with the Court of Appeals' long history of reviewing separation-of-powers disputes, including in the budget process.

#### a. The text and history of sections 2 and 3 limit the Governor's authority.

Section 2 requires that the Governor submit both "a complete plan of expenditures" and "recommendations as to proposed legislation, if any, which the governor may deem necessary to provide moneys and revenues sufficient to meet such proposed expenditures." N.Y. Const. art. VII, § 2. Section 3 then authorizes the Governor to submit "bills containing all the proposed appropriations and reappropriations included in the budget" (*i.e.*, appropriation bills) and "the proposed

legislation, if any, recommended [in the budget]" (*i.e.*, Article VII bills). *Id.* § 3. Section 3's provision for "proposed legislation" "recommended" in the budget refers back to section 2, which authorizes the Governor to introduce "recommendations as to proposed legislation, if any, which the governor may deem *necessary to provide moneys and revenues sufficient to meet such proposed expenditures*." *Id.* § 2 (emphasis added).

Sections 2 and 3 thus establish, by their plain text, that Article VII bills are limited to provisions necessary to implement the budget. Chief Judge Kaye's dissent in *Pataki* recognized as much. As she explained—in a point not disputed by the plurality or concurrence—the "very nature" of "nonappropriation" Article VII bills is that they "cannot contain items of appropriation . . . but *must nevertheless relate to some item in an appropriation bill*." *Pataki v. New York State Assembly*, 4 N.Y.3d 75, 114 (2004) (Kaye, C.J., dissenting) (emphasis added); *see also, e.g.*, *Silver v. Pataki*, 96 N.Y.2d 532, 535 n.1 (2001) (Article VII bills "commonly include[d] sources, schedules and sub-allocations for funding provided by appropriation bills, along with provisions authorizing the disbursement of certain budgeted funds"). Nothing in

sections 2 and 3 authorizes the Governor to introduce legislation that has no relation whatsoever to the budget.

The history of Article VII strongly supports reading sections 2 and 3 to impose substantive limitations on the content of Article VII bills. As explained above, before 1927, Executive budgeting did not exist and the Legislature introduced all types of legislation, including budget legislation. The 1927 amendments that first established the Executive budgeting process allowed the Governor to introduce *only* appropriation bills, *not* revenue bills or any other budget-related legislation. *See* JA156–60. In 1938, the Committee on State Finances and Revenues that reviewed the Executive budgeting process concluded that limiting budgeting to appropriations—and excluding revenue generation—was problematic. As the committee wrote: "Believing that the revenue side of the budget is of equal importance with the expenditure side, the committee feels that any bills to carry into effect legislation affecting the revenues of the State which the Governor may propose should have the same dignity and importance as his appropriation bills, and all should be submitted directly by the Governor and treated as budget bills." JA164. The committee therefore proposed the current language

as a narrow expansion of the Executive budgeting process. *See* JA164; JA175. Nothing about the history of the 1938 amendments suggests that, as the district court held, they gave the Governor carte blanche to use the budget process to introduce policy proposals that have absolutely nothing to do with the budget.

#### b. The district court misread the phrase "may deem" and ignored the Court of Appeals' longstanding practice of reviewing budget-related separation-of-powers disputes.

The district court did not dispute that sections 2 and 3, by their plain terms, only authorize the Governor to introduce budget-related legislation. Instead, the court read the phrase "may deem" to mean that "[s]ections 2 and 3 do not create substantive limits on Article VII bills" and leave the content of those bills entirely "to the Governor's discretion." JA245 (emphasis omitted). That is wrong.

The Constitution's "may deem" language does not allow the Governor to deem anything budget-related by Executive fiat. Other courts have held that identical language does *not* confer unreviewable authority, instead simply requiring deference to the executive actor authorized to make the determination in the first instance. For instance, in *Barlow v. Collins*, the Supreme Court held that a statute

authorizing the Secretary of Agriculture to prescribe such regulations "as he may deem proper" does not commit the propriety of a regulation "entirely to the discretionary judgment of the Executive Branch without the intervention of the courts." 397 U.S. 159, 165–66 (1970). As the Court put it, "the permissive term 'as he may deem proper,' by itself, is not to be read as a congressional command which precludes a judicial determination of the correct application of the governing canons." *Id.* at 166. The D.C. Circuit reached the same conclusion in *Marshall County Health Care Authority v. Shalala*, 988 F.2d 1221 (D.C. Cir. 1993), explaining that the defendant, the Secretary of Health and Human Services, "puts too much emphasis on the word 'deem'" in arguing that the phrase "shall deem" granted her "unreviewable discretion." *Id.* at 1224. The district court in this case identified no reason that the phrase "may deem" has a more expansive meaning here, giving the Governor unfettered discretion to use the Executive budgeting process to introduce legislation on any subject she chooses.

The district court's reading of the phrase "may deem" also conflicts with the Court of Appeals' longstanding recognition of its vital role in ensuring that the Executive and Legislature do not exceed their "given

sphere of authority." *Saratoga County*, 100 N.Y.2d at 821. Though the Court of Appeals has recognized that some distinctions between "executive and legislative categories" can be "elusive," requiring some "play in [the] joints," the Court has consistently emphasized that it "falls to the courts, and ultimately to this Court," to determine whether Executive action is "ultra vires" because it intrudes on the Legislature's authority. *Id.* at 822.

The Court of Appeals has exercised its power to supervise the other two branches' constitutional roles by reining in overreach in the budget process. In *Pataki*, for example, the court decided two cases in which the Governor and the Legislature each accused the other of "overstepping limitations placed by the Constitution on their roles in enacting the budget." 4 N.Y.3d at 81. While the judges disagreed as to whether there had been such "overstepping," the Court was unanimous that it had the authority to adjudicate the dispute. *Id.* at 99 (plurality op.); *id.* at 102 (Rosenblatt, J., concurring); *id.* at 105 (Kaye, C.J., dissenting).

Other decisions reach the same conclusion. In *New York Bankers Association v. Wetzler*, the question was "whether there was authority

to enact" a statute under section 4 of Article VII. 81 N.Y.2d 98, 102 (1993). The Court of Appeals rejected the argument that resolving that question would be an "unwarranted judicial interference in the budgetary process," holding that "[o]ur precedents clearly compel the conclusion that the controversy is justiciable." *Id.* at 102–03. Similarly, in *Saxton v. Carey*, the Court of Appeals held that, while it would not police the *degree* of itemization of the budget required by Article VII, "courts will always be available to resolve disputes concerning the scope of that authority which is granted by the Constitution to the other two branches of the government," including in the "budgetary process." 44 N.Y.2d 545, 551 (1978); *see also Pataki*, 4 N.Y.3d at 103 (Rosenblatt, J., concurring) ("Determining the constitutional scope of the legislative and executive powers is, after all, a basic function of the judicial branch.").

New York's embrace of judicial review of the budgeting process is consistent with other states' approaches. *See Saratoga County*, 100 N.Y.2d at 824 (looking to other states' decisions showing a "commitment to the separation of powers and constitutional government"). Increasingly, other states' courts of last resort have recognized the need for judicial intervention to counteract "continuing abuses" in budgeting.

*Associated Builders & Contractors v. Ventura*, 610 N.W.2d 293, 313 (Minn. 2000) (Anderson, J., concurring in part and dissenting in part); *see also id.* at 301–03 (majority op.). And courts across the country have emphasized the importance of judicial review of analogous state constitutional provisions that prevent abuse of the budget process.[5] Given its own history policing the boundaries between the Legislature and Executive with respect to budgeting, there is every reason to think the Court of Appeals would take the same approach to sections 2 and 3 of Article VII.

The district court thus erred in reading the phrase "may deem" to confer unreviewable discretion on the Governor. That is not how other courts (including the U.S. Supreme Court) have read identical language. And the district court's decision conflicts with the Court of Appeals' important role in policing separation-of-powers abuses.

---

[5] *See, e.g.*, *Board of Trs. of N.D. Pub. Emps. Ret. Sys. v. North Dakota Legislative Assembly*, 996 N.W.2d 873, 880 (N.D. 2023); *Arizona Sch. Bds. Ass'n Inc. v. State*, 501 P.3d 731, 737–39 (Ariz. 2022); *Planned Parenthood of St. Louis Region v. Department of Soc. Servs.*, 602 S.W.3d 201, 207–08 (Mo. 2020); *Douglas v. Cox Ret. Props., Inc.*, 302 P.3d 789, 793 (Okla. 2013); *South Dakota Educ. Ass'n/NEA By & Through Roberts v. Barnett*, 582 N.W.2d 386, 390–92 (S.D. 1998).

Finally, even if the district court were correct that the Governor need only "deem" something budget-related to make it so, she did not even do that. The Governor's statement accompanying the Amendment asserts that it "is necessary to implement the FY 2026 Executive Budget because it will avoid unnecessary financial harm to employers and business." JA58. That cursory and vague statement makes no attempt to explain how the Amendment impacts the budget or "provide[s] moneys and revenues" to the state. Nor could it have. As the Legislature repeatedly recognized, stripping employees of their liquidated-damages remedy for section 191 violations has zero fiscal impact on the state. JA187, JA194, JA201, JA208, JA213, JA220, JA227.

**2. The anti-rider provision in section 6 independently requires that Article VII legislation be budget-related.**

Section 6 of Article VII, the "anti-rider" clause, requires that any provision "embraced in any appropriation bill submitted by the governor . . . relate[] specifically to some particular appropriation in the bill" and be "limited in its operation to such appropriation." N.Y. Const.

art. VII, § 6. It "imposes" a "judicially enforceable limit[]" on the Article VII process. *Pataki*, 4 N.Y.3d at 99 (plurality op.).

To be sure, section 6's text only limits the contents of "appropriation bill[s]." N.Y. Const. art. VII, § 6. But its history demonstrates that its reference to "appropriation bill[s]" was intended to encompass *all* Executive budgeting legislation—both appropriation bills and the Article VII bills "necessary to provide moneys and revenues" for appropriation bills, *id.* § 2. Historical context is especially important in interpreting constitutional provisions. *E.g.*, *Delgado v. State*, 39 N.Y.3d 242, 262 (2022).

The predecessor to section 6—Article III, section 22—was adopted in 1894 when all legislation, including budget-related legislation, originated in the Legislature. It was meant "to prevent the inclusion of general legislation in an appropriation bill," *People v. Tremaine*, 252 N.Y. 27, 48 (1929)—that is, to prohibit the Legislature from using the budget process to force through laws "which otherwise could not be enacted," JA91. At the 1938 Constitutional Convention, the Committee on State Finances and Revenues recommended moving this provision into Article VII and applying it to *all* budget-related legislation. As the

Committee's report explained, "the proposed amendment . . . *extends its operation to include not only the Governor's budget bills* but any supplemental appropriation bill." JA166 (emphasis added). That report repeatedly used the phrase "budget bills" to refer to both appropriation bills and Article VII bills. *E.g.*, JA164 (both appropriation and Article VII bills "should be submitted directly by the Governor and treated as budget bills"). Without being "extend[ed]" to cover *all* budget-related legislation, section 6 could not prevent the abuses that led to its adoption—*i.e.*, tying unpopular laws to the budget and forcing through "provisions which otherwise could not be enacted." JA91.

This Court applied section 6's substantive limits to Article VII bills in *Seidemann*, 842 F. App'x 655. *Seidemann* concerned a challenge to section 215 of the New York Civil Service Law, which protected public-sector unions from claims seeking reimbursement of agency shop fees after *Janus v. American Federation of State, County, and Municipal Employees, Council 31*, 585 U.S. 878 (2018). *See* 2019 N.Y. Laws ch. 56, pt. DD, § 1. Even though it was part of an Article VII bill—not an appropriation bill—this Court applied section 6 to section

215, ultimately holding that section 215 was sufficiently related to the budget. *Seidemann*, 842 F. App'x at 659; *see also Seidemann v. Professional Staff Cong. Loc. 2334*, 432 F. Supp. 3d 367, 390 (S.D.N.Y. 2020) ("Section 215 . . . must comport with Article VII, § 6"), *aff'd*, 842 F. App'x 655.

The district court in this case rejected this historical and legal authority, holding that because section 6 only applies to "appropriation bill[s]," and the Amendment is an Article VII bill, its restrictions do not apply. JA245. That was error.

First, the court mischaracterized the district court decision in *Seidemann* while failing to acknowledge this Court's opinion affirming it at all. Both *Seidemann* decisions upheld section 215 only after determining that it survived review under section 6. *See* 432 F. Supp. 3d at 390; 842 F. App'x at 659.[6] This Court even described the plaintiffs' section 6 argument as "the strongest" challenge to section 215

---

[6] The district court also sought to minimize the weight of *Seidemann* by observing that the parties may not have raised "the distinction between Article VII bills and appropriations bills" to the court. JA245. But that only indicates that the parties, the district court, *and* a unanimous panel of this Court all agreed that section 6 applies to all "budget bills." JA165.

on appeal, while disposing of other arguments in a footnote "for the reasons explained by the district court." *Seidemann*, 842 F. App'x at 659 & n.2. The district court simply "decline[d] to read" *Seidemann* to do what it in fact did: apply section 6's "anti-rider provision to Article VII bills." JA245. Moreover, the district court did not engage with the history of section 6, which (as discussed) was adopted to curtail the Legislature's abuse of the budgeting process to force through laws "which otherwise could not be enacted." JA91.

Second, the district court, in half a sentence, dismissed "plaintiffs' appeal to cherrypicked legislative history." JA245. But the Court of Appeals regularly considers constitutional history to interpret the Constitution's language, even when the language could, in other contexts, be read differently. *E.g.*, *Delgado*, 39 N.Y.3d at 262 (relying on historical context to reject the argument that "by law" means "by statute" even though it has that meaning elsewhere in the Constitution); *Bransten v. State*, 30 N.Y.3d 434, 441 (2017) (state employer contribution to health insurance is not "compensation" because "compensation for constitutional purposes has a unique and historical purpose"). Neither the defendant nor the district court even

disputed the history of section 6, which bolsters this Court's decision applying it to all types of budget bills.

### 3. The structure of Article VII bars non-budget-related legislation in Article VII bills.

Even absent any explicit textual limitation, the Court of Appeals' decision in *Pataki* suggests that the Court of Appeals would recognize implicit, structural limits on the Governor's ability to enact "essentially nonfiscal or nonbudgetary legislation" through the Article VII process. 4 N.Y.3d at 94 (plurality op.).

*Pataki* addressed the question of whether the Governor can use appropriation bills (not Article VII bills) to enact non-budget-related policy proposals by tying them to an appropriation. *See id.* As an example, the plurality asked whether the Governor could "raise a mandatory retirement age for firefighters, by making the higher age a condition of appropriations to fire departments." *Id.* at 93. The Court of Appeals recognized that such a provision would not violate the anti-rider provision in section 6 because the provision raising the mandatory retirement age "relates specifically to" the appropriation. *Id.* Yet a majority of the judges held that, even though Article VII does not explicitly prohibit such a non-budget-related condition on an

appropriation, such a condition is inconsistent with the structure of Article VII, which prohibits the use of the appropriations process to enact "legislation whose primary purpose and effect is not really budgetary." *Id.*; *see also id.* at 94 ("a Governor should not put into [an appropriations] bill essentially nonfiscal or nonbudgetary legislation"); *id.* at 101 (Rosenblatt, J., concurring) ("[A]nything that is more than incidentally legislative should not appear in an appropriation bill, as it impermissibly trenches on the Legislature's role.").[7]

While *Pataki* focused on appropriation bills, its reasoning about the structural limitations on budget legislation applies equally to Article VII bills. That is true for two principal reasons. First, allowing the Governor to include non-budget-related provisions in Article VII bills would invert the constructor/critic roles that the Constitution

[7] Because *Pataki* held that the Governor had not introduced impermissibly legislative appropriation bills in that case, it did not reach the question of whether these implicit limits on the content of appropriation bills were judicially enforceable. 4 N.Y.3d at 97 (plurality op.). But given the Court of Appeals' long history of adjudicating separation-of-powers disputes, including in the budget process, it is extremely likely that it would ultimately conclude that these implicit limits are enforceable. *See supra*, pp. 32–34. Rendering these limits unenforceable would do nothing to avoid the separation-of-powers problems that *Pataki* identifies.

generally confers on the Legislature and Governor, respectively. *Id.* at 82–83 (majority op.). In general, "the separation of powers requires that the Legislature make the critical policy decisions, while the executive branch's responsibility is to implement those policies." *Saratoga County*, 100 N.Y.2d at 822 (quotations omitted). The "whole point" of Article VII was to "transfer the role of 'constructor' from the Legislature to the Governor," but only "in the [executive budgeting] process." *Pataki*, 4 N.Y.3d at 82–83. Giving the Governor authority to introduce legislation on whatever subject she wants, without any judicial oversight, would effectively allow the Governor to act as an extra-powerful member of the Legislature while the budget is being considered. There is no way to reconcile that with either the Constitution's text and history or the Court of Appeals' insistence that Article VII did not "add to the Governor's power" or "deprive the Legislature of any of its prerogatives." *Id.* at 83; *see also id.* at 107 (Kaye, C.J., dissenting) ("Executive budgeting was not, however, meant to transfer significant lawmaking authority from the Legislature to the Executive.").

Second, if the Governor can introduce nonbudgetary legislation, she can force the Legislature to enact unpopular, non-budget-related policies that it would otherwise reject. When a legislator introduces a bill, there is little pressure to act with alacrity and no requirement to vote on it at all. But when the Governor introduces budget legislation, legislators must review, negotiate, and ultimately enact legislation in bulk in approximately two months. During that time, the Legislature cannot consider any other bill making an appropriation without the Governor's permission. N.Y. Const. art. VII, § 5. And if legislators fail to enact the Governor's budget in time, they—but not the Governor—stop getting paid. N.Y. Legis. Law § 5(1); N.Y. Const. art. IV, § 3.

It is therefore not realistic to expect the Legislature to police Article VII's structural limitations on its own. As the Washington Supreme Court put it in an analogous case, "[i]t is obvious why a legislator would hesitate to hold up the funding of the entire state government in order to prevent the enactment of a certain provision, even though he would have voted against it if it had been presented as independent legislation." *Flanders v. Morris*, 558 P.2d 769, 772 (Wash. 1977). Absent judicial oversight, the Governor will inevitably be able to

use the budget process to force through nonbudgetary provisions that would never otherwise pass the Legislature.

The facts here provide a powerful example of how damaging the Governor's misuse of her Article VII powers can be to the constitutional scheme. The Legislature rejected seven straight attempts to amend section 198; one such attempt was pending (and not progressing) when the Governor introduced her budget for fiscal year 2026. *See supra* p. 16. After the Governor included the Amendment in her budget, both houses promptly removed it from their versions before sending it back to her desk. *See supra* pp. 17–18. It was only after the Governor insisted on keeping the Amendment in the budget in a later round of negotiations that the Legislature (which had not been paid for a month) ultimately conceded and enacted the Governor's budget with the Amendment. The Amendment was therefore enacted not because the Legislature supported it, but because the Legislature did not sufficiently prioritize opposing it to hold up the entire budget. Nothing about Article VII's text or history suggests that the Legislature should be put to the choice of holding up the budget (and its members'

paychecks) or acceding to non-budget-related policy bills that the Legislature consistently refused to enact on its own.

The district court dismissed *Pataki*'s structural limitations on Executive budgeting as limited to appropriation bills. According to the district court, *Pataki*'s concerns about misuse of the budget process rested entirely on section 4 of Article VII, which limits the Legislature's authority to amend appropriation bills, but not Article VII bills. JA246. That misreads *Pataki*. While the plurality did briefly mention section 4, its reasoning does not focus on that section but on "the legitimate purpose of an appropriation bill" more generally. *Pataki,* 4 N.Y.3d at 93 (plurality op.). And the concurrence did not discuss section 4 at all, but rested its analysis on the need to "protect the Legislature's lawmaking preeminence" from Executive abuse of the budget process. *Id.* at 100 (Rosenblatt, J., concurring).

As discussed above, even outside of section 4, the budget process gives the Governor enormous power to force through legislation that the Legislature would not enact on its own. That was, in many ways, the whole point of Article VII. But it is also why, as *Pataki* recognizes, it is critical for courts to ensure that the Governor cannot use the Article VII

process to advance "essentially nonfiscal or nonbudgetary legislation." *Id.* at 94 (plurality op.).

For all of these reasons, the Court of Appeals is extremely likely to hold that the Governor's Article VII bills must bear some rational relationship to an appropriation in the budget.

### B. The Amendment Does Not Relate to the Budget.

As the district court and this Court recognized in *Seidemann*, Article VII legislation is valid where there is "a rational relationship between the challenged provision and a general item of appropriation in the budget." 432 F. Supp. 3d at 390. While this test "impose[s] a relatively low bar," *Seidemann*, 842 F. App'x at 659, courts must nevertheless hold the Governor to it.

The Amendment fails to clear even this low bar. It has no relationship whatsoever to any appropriation. It stripped plaintiffs of a remedy for violations of section 191, which only applies to private employers—not the state. *See* NYLL § 190(3). It is a pure, nonbudgetary policy matter with no connection to state revenues or expenditures. The Legislature's fiscal impact assessments confirm this,

stating that the fiscal impact of the Amendment is: "None." *See supra* p. 16.

The Amendment also bears no resemblance to provisions that courts have found constitutional under this test. In *Schuyler v. South Mall Constructors*, 32 A.D.2d 454 (N.Y. App. Div. 3d Dep't 1969) (per curiam), the Appellate Division upheld a provision authorizing a state commissioner to negotiate a contract to construct a building where the budget "specifically appropriate[d]" funds for the construction *of that building*. *Id.* at 456. The Appellate Division also upheld a provision creating a commission because its purpose was to review state officer compensation, which bears a clear relationship to appropriations. *See Center for Jud. Accountability, Inc. v. Cuomo*, 167 A.D.3d 1406, 1412 (N.Y. App. Div. 3d Dep't 2018). Finally, the *Seidemann* decisions upheld the constitutionality of a provision protecting public sector unions from certain lawsuits because the budget appropriated funds for public employees and the provision was therefore related to whether the employees (or the entities managing their paychecks) could be held liable. *See Seidemann*, 842 F. App'x at 659; *Seidemann*, 432 F. Supp. 3d at 390. In each case, the provision at issue had a rational

relationship to the measures passed as part of the same budget. The Amendment here has no such relationship, rational or otherwise, to the budget through which it was passed.

The district court erred by holding that the Amendment was sufficiently related because it was conceivable that it could affect the state's budget in some speculative, attenuated way. Notably, the district court did not even acknowledge the Governor's attempt at a justification—that the Amendment "will avoid unnecessary financial harm to employers and business." JA58. That statement, on its face, does not meet the Governor's constitutional burden because it does not "deem [the Amendment] necessary to provide moneys and revenues sufficient to meet" her proposed expenditures. N.Y. Const. art. VII, § 2.

Rather than invoke the Governor's own statements, the district court put forward its own trio of potential justifications. The district court speculated that the Amendment might "increase [businesses'] taxable income, and thus the taxes they pay to the state"; that "it could encourage more businesses to operate in New York"; or that "it could encourage businesses to hire additional workers" who would, in turn, "pay income and sales taxes that would contribute to the public fisc."

JA247. This speculation does not render the Amendment constitutional.

First, the district court's assessment conflicts with the Legislature's own fiscal impact statements. Rather than acknowledge the Legislature's memoranda, the district court asserted, without any basis, that the Legislature simply did "not contemplate[]" the court's own justifications. JA247. But the memoranda are clear: Each of the seven bills legislators proposed stated that the Amendment would have *no* fiscal impact on state or local governments.

Second, affirming that the type of speculative, attenuated impact on tax revenue the district court put forth is sufficient for an Article VII bill to be related to the budget would, as a practical matter, be equivalent to giving the Governor unreviewable authority. As the Court of Appeals has explained, because "most activities can be viewed as having some relationship to expenditures," it is important to avoid "too broad a reading" of an expenditure-related standing provision that would sweep in "virtually all governmental acts." *Rudder v. Pataki*, 93 N.Y.2d 273, 281 (1999). That reasoning applies equally here. The district court's test for constitutional review is so capacious that any

policy legislation could qualify as budget-related by setting off a chain of events that may ultimately have some de minimis impact on tax revenue.

Third, the district court's post-hoc justifications cannot fulfill the Governor's constitutional obligations. As the district court effectively concedes, "there isn't evidence that [these justifications] were contemplated in the first instance" by the Governor. JA247. But the Constitution requires, at the very least, that the *Governor* "deem" Article VII bills "necessary to provide moneys and revenues sufficient to meet" the proposed expenditures in her budget upon introduction—it does not permit a trial court to come up with its own theory for how the legislation could be considered budget-related. N.Y. Const. art. VII, § 2. Here, the Governor did not even try to draw the required budgetary connection.

The district court seeks to defend its creation of new budget-related rationales for the Amendment by claiming that it is "permitted to hypothesize as to rationales for legislation." JA247 (quotations omitted). To be sure, in some instances courts may supply post-hoc rationalizations for the Legislature to uphold a statute. *See, e.g.*,

*Progressive Credit Union v. City of New York*, 889 F.3d 40, 49 (2d Cir. 2018) (explaining that, on rational basis review, "whether a conceivable reason for enacting a statute . . . was considered by the legislature is entirely irrelevant for constitutional purposes"). But the question here is whether the Governor violated the Constitution by introducing the legislation in violation of her Article VII powers—not whether the Legislature violated the Constitution by passing it. *Cf. Securities & Exch. Comm'n v. Chenery Corp.*, 318 U.S. 80, 93–94 (1943) (executive branch agency's "action must be measured by what the [agency] did, not by what it might have done"). The Governor unconstitutionally introduced the Amendment because she failed to "deem" it "necessary" to state revenue. So the district court's hypothesized budget-related rationales, even if they were somehow valid, cannot help the Amendment, because they were never proposed by the Governor.

For these reasons, this Court should hold that the Amendment is unconstitutional because it does not have any rational relationship to the budget, as Article VII requires.

## II. The Amendment Violates the Due Process Clause of the New York Constitution as Applied to Plaintiffs' Claims.

The Amendment is invalid as applied to this case for a second, independent reason: It violates the New York Constitution's Due Process Clause to the extent it applies retroactively to plaintiffs' liquidated-damages claims.

### A. Retroactive Application of the Amendment Violates Due Process.

While retroactive civil legislation is not per se unconstitutional under the New York Constitution, "retroactive legislation presents problems of unfairness that are more serious than those posed by prospective legislation." *Regina Metro. Co., LLC v. New York State Div. of Hous. & Cmty. Renewal*, 35 N.Y.3d 332, 375 (2020) (quotations and alterations omitted). The "retroactive application of a newly enacted provision" therefore only "comport[s] with the requirements of due process" if the retroactivity is "supported by a rational basis commensurate with the degree of retroactive effect." *Id.*

For more than a century, New York courts have recognized that these principles prohibit legislation that retroactively strips plaintiffs of their ability to pursue claims that were valid when filed. Those cases control here: While the Amendment purports merely to alter the

remedy, its practical effect is to strip the claims of value. And even if retroactively repealing any meaningful remedy were not categorically impermissible, there is no rational basis for applying the Amendment retroactively.

New York courts have repeatedly rejected retroactive legislation that vitiates a claim that was "viable at the time it was filed." *Ruffolo v. Garbarini & Scher, P.C.*, 239 A.D.2d 8, 12 (N.Y. App. Div. 1st Dep't 1998) . This line of cases goes back to *Gilbert v. Ackerman*, 159 N.Y. 118 (1899), in which the Court of Appeals rejected the Legislature's attempt to shorten the statute of limitations in a way that made it impossible for the plaintiff to file his claim. "The right possessed by a person of enforcing his claim against another is property," the Court explained, "and if a statute of limitations, acting upon that right, deprives the claimant of a reasonable time within which suit may be brought," it violates the Constitution's due process protections. *Id.* at 124.

Following *Gilbert*, multiple New York courts have rejected legislative attempts to undermine pending litigation by retroactively shortening the statute of limitations, reasoning that pending litigation

is a “vested right[]” that cannot be eliminated without violating due process. *Ruffolo*, 239 A.D.2d at 12. Even where “the Legislature provide[s] that the amendment ‘shall take effect immediately,’” the amendment “cannot be applied to require dismissal of an action that was viable at the time it was filed. Such a result would impair vested rights.” *Id.*; *Merz v. Seaman*, 265 A.D.2d 385, 388–89 (N.Y. App. Div. 2d Dep’t 1999) (same); *see also Alston v. Transportation Workers Union of Greater New York*, 225 A.D.2d 424, 425 (N.Y. App. Div. 1st Dep’t 1996) (similar).

Courts have similarly rejected retroactive legislation that deprives plaintiffs of their right to pursue valid claims outside the statute-of-limitations context. For instance, courts have rejected attempts to retroactively require that service of process be “completed” and not just “effected” within a given period, *see HSBC Bank USA, N.A. v. Besharat*, 80 Misc. 3d 269, 277–78, 284–85 (N.Y. Sup. Ct. 2023), or to retroactively change the period in which a certain type of notification must be given, *see Bloch v. Schwartz*, 266 A.D. 188, 190 (N.Y. App. Div. 1st Dep’t 1943).

These cases apply here. The only difference between the retroactive legislation in these cases and the Amendment is that the Amendment does not bar plaintiffs from pursuing their claim altogether but instead deprives them of any meaningful remedy. But that distinction makes no practical difference. Nothing in cases like *Ruffolo* suggests that the case would have come out differently if the legislation had limited the recovery of plaintiffs filing outside the newly shortened statute of limitations to a penny rather than barring their claims outright. Nor would such a distinction make any sense. As Maryland's highest court put it, there is no "logical rationale why, under our constitution, we should permit retroactive application of a statute requiring a reduction in damages recovered by a successful plaintiff when we deny retroactive abolishment of the cause of action." *Prince George's County v. Longtin*, 19 A.3d 859, 883 (Md. 2011) (quotations omitted). Other state courts have similarly held that retroactively imposing significant substantive limitations on damages violates due

process and other analogous state constitutional doctrines.[8] There is no reason to think the Court of Appeals would reach a different conclusion.

Even if retroactively depriving plaintiffs of any meaningful remedy for their pending claims does not categorically violate the Due Process Clause under *Gilbert* and subsequent cases applying *Gilbert*, there is no basis for applying the Amendment retroactively that is "commensurate with the degree of disruption to settled, substantial rights." *Regina Metro.*, 35 N.Y.3d at 386. When plaintiffs filed this case, it had been settled since at least *Vega* in 2019 that manual workers whose employers violated section 191 were entitled to recover, as liquidated damages, the value of their underpaid wages. Thus, for at least six years—the entire limitations period—both employers and employees knew (or should have known) about the weekly-pay requirement and its associated liquidated-damages remedy. Plaintiffs retained counsel and filed this suit based on those settled principles. And, as in *Regina Metropolitan*, "there is no indication here that the

---

[8] *Estate of Bell v. Shelby County Health Care Corp.*, 318 S.W.3d 823, 832 (Tenn. 2010); *Klotz v. St. Anthony's Med. Ctr.*, 311 S.W.3d 752, 759–60 (Mo. 2010); *Miles v. Weingrad*, 164 So. 3d 1208, 1212 (Fla. 2015); *Martin by Scoptur v. Richards*, 531 N.W.2d 70, 88 (Wis. 1995); *Blair v. McDonagh*, 894 N.E.2d 377, 391 (Ohio Ct. App. 2008).

Legislature considered the harsh and destabilizing effect on [plaintiffs'] settled expectations, much less had a rational justification for that result." 35 N.Y.3d at 383.

The Legislature is free to amend the liquidated-damages provision prospectively however it likes. But applying those changes retroactively, including to pending litigation, violates *Gilbert* and achieves nothing other than disrupting plaintiffs' settled expectations and allowing Buffalo Exchange to escape a remedy that it could have avoided by complying with the statute's weekly-pay requirement.

### B. The District Court Erred in Concluding That the Amendment Was Not Impermissibly Retroactive.

The district court's holding that the Amendment does not violate the Constitution's Due Process Clause is legally erroneous for several reasons.

First, the district court ignored *Gilbert*, *Ruffolo*, and the other cases plaintiffs cited that establish that pending litigation is "property," *Gilbert*, 159 N.Y. at 124, and a "vested right[]," *Ruffolo*, 239 A.D.2d at 12, that cannot be retroactively taken away. The court neither acknowledged those cases nor explained why they do not apply here.

Second, the district court erroneously held that the Court of Appeals' decision in *Article 13 LLC v. Ponce De Leon Federal Bank*, 45 N.Y.3d 441 (2025), forecloses plaintiffs' due process claim. JA247–48. Nothing in *Article 13* questions *Gilbert* and its progeny or otherwise undermines plaintiffs' claims. The asserted "vested right" in *Article 13* was the right "to wait long past the limitations period to challenge the validity of a foreclosure action that could have been challenged and refiled by the actual holder of the note and mortgage at any time during the six-year limitations period." 45 N.Y.3d at 457. That is a much more convoluted right than the right to pursue a claim that was valid when filed. Indeed, the Court expressly reserved the question whether a plaintiff who did not "cho[o]se to sit on its rights"—and thus had a genuine, protectable claim—could bring a due process challenge. *Id.* at 457 & n.4.

Nor does *Article 13*'s reasoning support the district court's decision. *See* JA247–48. *Article 13* did emphasize that there must be a "vested right" and a "source for [that] claimed right." 45 N.Y.3d at 454–55. But *Gilbert* and *Ruffolo* already recognized that the right to pursue an existing claim is one such right. Far from undermining those cases,

*Article 13* cited *Brothers v. Florence*, 95 N.Y.2d 290 (2000), which reaffirmed *Gilbert* and held that the Legislature cannot retroactively shorten the statute of limitations without giving plaintiffs a "reasonable time" in which to file claims. *Article 13*, 45 N.Y.3d at 454–55, 459; *Brothers*, 95 N.Y.2d at 300.

Third, the district court erroneously asserted that plaintiffs did not lose their right to pursue their claim because the Amendment only repealed the liquidated-damages remedy. JA248. As discussed, there is no categorical distinction between retroactively barring plaintiffs from pursuing claims and retroactively barring plaintiffs from recovering any meaningful remedy for those claims. The Court of Appeals effectively recognized as much in *Regina Metropolitan*, holding that the Legislature's retroactive imposition of treble damages violated due process. *See* 35 N.Y.3d at 379–80, 384–86. Here, plaintiffs' liquidated-damages award would have been far more than three times the interest-only remedy the statute now allows them. As multiple state courts of last resort have recognized, caselaw invalidating the retroactive imposition of new types of damages requires invalidating the retroactive repeal of plaintiffs' right to recover similar damages, too.

*E.g.*, *Prince George's County*, 19 A.3d at 881; *Estate of Bell v. Shelby County Health Care Corp.*, 318 S.W.3d 823, 832 (Tenn. 2010); *Klotz v. St. Anthony's Med. Ctr.*, 311 S.W.3d 752, 759–60 (Mo. 2010). The district court offered no reason to think the Court of Appeals would accept a distinction that these courts all rejected.

Fourth, the district court incorrectly held that the Amendment had a rational basis commensurate with its degree of retroactive effect. JA248. Under *Gilbert*, this balancing is not even necessary because *Gilbert*, *Ruffolo*, and other similar cases categorically reject attempts to retroactively deprive plaintiffs of the right to pursue otherwise valid claims. *See supra* pp. 53–55.

Even if this balancing were necessary, however, the district court erred in holding that there is a valid reason to disrupt plaintiffs' "settled, substantial rights." *Regina Metro.*, 35 N.Y.3d at 386. The district court suggested that because this Court or the New York Court of Appeals might have disagreed with *Vega* and held that section 198 did not give plaintiffs a cause of action at all, plaintiffs "had at most a tenuous claim for liquidated damages even before the amendment," which "muted" "any retroactive effect." JA248. But whether plaintiffs

would have ultimately prevailed is irrelevant to the analysis of whether depriving plaintiffs of the right to pursue their claims is unconstitutional. Neither *Gilbert* nor any of the cases applying it analyzed the strength of the plaintiffs' underlying claims to determine whether barring plaintiffs from pursuing those claims violated due process. Similarly, here, plaintiffs' claim for liquidated damages was valid at the time it was filed and a future court's decision on the merits cannot eliminate the existence of their right to pursue that claim, which had been settled since at least *Vega* in 2019.

## III. In the Alternative, This Court Should Certify the Questions in This Appeal to the New York Court of Appeals.

If the Court does not reverse the district court's decision, it should certify the novel questions of New York constitutional law to the New York Court of Appeals. "Whenever it appears to" this Court "that determinative questions of New York law are involved in" a pending case "for which no controlling precedent of the [New York] Court of Appeals exists, the court may certify the dispositive questions of law to the Court of Appeals." 22 N.Y.C.R.R. § 500.27(a); *see* 2d Cir. R. 27.2(a) (allowing certification "[i]f state law permits").

"In deciding whether to certify a question to the New York Court of Appeals," this Court considers "three questions: (1) whether there are authoritative state court decisions; (2) whether the issue is important to a state policy; and (3) whether certification can resolve the appeal." *Asinga v. Gatorade Co.*, 182 F.4th 222, 232 (2d Cir. 2026) (quotations and alterations omitted). All three factors weigh heavily in favor of certifying the two questions presented here.

First, the Court of Appeals has never directly addressed the two specific questions implicated by plaintiffs' appeal. The Court of Appeals routinely considers separation-of-powers disputes, including disputes relating to Executive budgeting. It also regularly interprets the Due Process Clause of the New York Constitution. But it has never addressed what limitations the Constitution places on the substance of Article VII bills. And it has never addressed how cases like *Gilbert* apply to legislation like the Amendment, which putatively preserves a cause of action while retroactively depriving plaintiffs of any meaningful remedy. The Court of Appeals has certainly never addressed the constitutionality of the Amendment. This factor therefore weighs in favor of certification. *See Schoenefeld v. New York*,

748 F.3d 464, 470 (2d Cir. 2014) (certifying where "the Court of Appeals has not issued any opinion addressing the constitutionality" of a state law).

Second, the scope of the Governor's Article VII powers and the relationship between the Executive and Legislative branches are important to New York state policy. The Court of Appeals' decisions adjudicating the balance between the Legislative and Executive branches in the budget process make that clear. *E.g.*, *Saxton*, 44 N.Y.2d at 548; *Pataki*, 4 N.Y.3d at 99. This Court has found that certification is warranted where the Court was asked to give an "interpretation of home rule principles in the New York State Constitution," and to consider "the competing constitutional values involved when State legislation impinges on and overlaps with local concerns." *Parker v. Alexander*, 171 F.4th 146, 153 (2d Cir. 2026). Analogous considerations about the relationship between the Legislative and Executive branches arise here, so this factor, too, weighs in favor of certification.

Third, certification would entirely resolve the appeal. The only two questions on appeal concern whether the Amendment is constitutional under Article VII and the Due Process Clause of the New

York Constitution. Because "the certified questions are determinative of the claims in this case," this factor weighs in favor of certification. *Beardslee v. Inflection Energy, LLC*, 761 F.3d 221, 232 (2d Cir. 2014).

Thus, if the Court does not reverse the district court, it should certify the following questions to the New York Court of Appeals:

1. Is the amendment to section 198 of New York Labor Law enacted as part of the Governor's budget for fiscal year 2026 unconstitutional because it violates the restrictions on the Governor's power to introduce legislation in Article VII of the New York Constitution?

2. Does the amendment to section 198 of New York Labor Law enacted as part of the Governor's budget for fiscal year 2026 violate the Due Process Clause of the New York Constitution to the extent it applies retroactively to pending claims?

## CONCLUSION

For the foregoing reasons, this Court should reverse the judgment of the district court, or, in the alternative, certify the questions presented to the New York Court of Appeals.

October 6, 2026

Respectfully submitted,

*/s/ David J. Zimmer*
David J. Zimmer
ZIMMER, CITRON & CLARKE LLP
711 Atlantic Avenue, 6th Floor
Boston, MA 02111
(617) 676-9421

Julia A. Solomon-Strauss
ZIMMER, CITRON & CLARKE LLP
14 Ridge Square NW, Suite 328
Washington, DC 20016
(617) 676-9410

Molly Brooks
Justin M. Swartz
OUTTEN & GOLDEN LLP
685 Third Avenue, 25th Floor
New York, NY 10017
(212) 245-1000

*Counsel for Plaintiffs-Appellants*

## CERTIFICATE OF COMPLIANCE

1. This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B)(i) because it contains 12,538 words, excluding those parts of the brief exempted by Federal Rule of Appellate Procedure 32(f).

2. This brief complies with the typeface and type style requirements of Federal Rule of Appellate Procedure 32(a)(5) and 32(a)(6) because it has been prepared in a proportionately spaced typeface using Microsoft Word in Century Schoolbook, 14-point font for text and footnotes.

3. The hard copies of this brief are identical to the electronically filed version.

Dated: October 6, 2026

*<u>/s/ David J. Zimmer</u>*
David J. Zimmer

## CERTIFICATE OF SERVICE

I, the undersigned counsel, certify that I electronically filed the foregoing document with the United States Court of Appeals for the Second Circuit on October 6, 2026, by using the ACMS system. I certify that the counsel of record for appellee will be served by the ACMS system.

*/s/ David J. Zimmer*
David J. Zimmer